UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBOURAH MATTATALL,

     Plaintiff,

                                  Case No. 13-14344

v.

                                  Hon. John Corbett O'Meara

TRANSDERMAL CORP.,

     Defendant.

_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant's motion for summary judgment, filed

November 27, 2013, which has been fully briefed.  The court heard oral argument

on April 17, 2014, and took the matter under advisement.  For the reasons stated

below, Defendant's motion is granted.

Plaintiff Debourah Mattatall brought this action on October 15, 2013,

alleging that Defendant Transdermal Corporation breached two agreements

between the parties: a share purchase agreement and an employment agreement.

Defendant seeks summary judgment or dismissal, contending that Plaintiff's claims

are barred by a settlement agreement and release, Plaintiff has failed to sufficiently

plead her claims, and Plaintiff's claims related to the share purchase agreement are

subject to a mandatory forum selection clause and must be brought in New York. The court finds that Plaintiff's claims are barred by release, as discussed below.

## BACKGROUND FACTS

Mattatall was a defendant in a lawsuit brought by minority shareholders in DPM Theraputics Corporation, a company that Mattatall founded with Dr. Pankaj Modi. The suit ("the Fia application") was brought in Ontario, Canada; the applicants were the minority shareholders of DPM, the respondents were DPM, Dr. Pankaj Modi and Mattatall. Pl.'s Ex. H. The applicants sought an injunction to prevent Mattatall and Modi, DPM's majority shareholders, from selling DPM's assets to Transdermal.

In October 2009, before the Fia application was acted upon by the court, Mattatall and Modi sold their shares in DPM to Transdermal. Mattatall, Modi, and Transdermal signed a Stock Purchase Agreement on October 21, 2009. Pl.'s Ex. I. Shortly thereafter, Mattatall and Transdermal entered into an Employment Agreement, whereby Mattatall became Executive Vice President of Transdermal. Pl.'s Ex. J.

On October 22, 2009, the Ontario Superior Court of Justice issued an order enjoining DPM from selling its assets to Transdermal. However, this order was effectively moot because Mattatall and Modi had sold their shares to Transdermal

the day before.  This legal proceeding apparently remained dormant for the next two years, while Transdermal took control of DPM and Mattatall commenced her employment with Transdermal.  In 2010, Transdermal brought an application against the DPM minority shareholders in Ontario, although it is not clear from the record on what basis the suit was brought.  See Pl.'s Ex. O at 1.

Plaintiff contends that Transdermal did not fulfill its obligations under either the Stock Purchase Agreement or the Employment Agreement, citing a lack of funds.

In September 2012, the parties to the Ontario lawsuit and Transdermal negotiated a settlement regarding the Fia application and the Transdermal application.  See Pl.'s Ex. O at 1-2.  The parties agreed to dismiss the Fia application and the Transdermal application without costs.  Transdermal and DPM agreed to provide cash payments and Transdermal stock to the applicants. Id. at 3. The Settlement Agreement also contained the following release:

> 4. General Releases and Waivers by Applicants: Upon the execution and delivery of this Settlement Agreement, *Transdermal, DPM, Modi and Mattatall and each Applicant*, on his, her or its, as the case may be, own behalf and behalf of his heirs, assigns, attorneys, agents and legal representatives, officers, directors and shareholders *does hereby release, waive and forever discharge each other*, including each of their current and former officers, directors, employee, shareholders, attorneys and accountants, agents, and successors and assigns, *of and from any and all claims, causes of action, obligations, demands and liabilities whatsoever, of every name and nature, both in law and*

-3-

*equity, known and unknown, anticipated and unanticipated, which a Party had, has or hereafter may have*, or which any person or entity may have on any Party's behalf, against each other, including their current and former officers, directors, employees, shareholders, attorneys and accountants, agents and successors and assigns, *because of or arising from any matter, event or thing which has happened, developed or occurred before the execution of this Settlement Agreement.*

Pl.'s Ex. O at 3-4 (emphasis added). "Applicants" are defined in Attachment A to the agreement, and do not include Mattatall or Modi. The term "Party" refers to all parties to the agreement, including Mattatall. Id. at 1.

The Settlement Agreement also contains a merger clause: "All understandings heretofore had between and among the Parties are merged in this Settlement Agreement and the Attachments and Exhibits annexed hereto and to be executed and delivered hereunder, which along fully and completely express the agreement of the Parties and supersede all prior or contemporaneous agreements, contracts, discussions or representations, whether oral or written, with respect to the subject matter hereof." Pl.'s Ex. O at ¶ 10.

Before Mattatall agreed to the settlement, she raised the issue of money Transdermal owed her pursuant to the Stock Purchase Agreement and Employment Agreement and initially refused to consent to the dismissal of the Fia application. Pl.'s Ex. M at 1. In attempting persuade Mattatall to settle, Transdermal's counsel stated that "any claim that Ms. Mattatall has against DPM or Transdermal is

wholly extraneous to the matter of the settlement of the Fia Application.  If Ms.

Mattatall has a claim against Transdermal or DPM, whether it be for

indemnification or legal fees or otherwise, she is free to pursue it.  In our respectful

view if would be a breach of Ms. Mattatall's fiduciary duty as an officer and

director of DPM to stand in the way of the settlement of the Fia Application on the

basis of a separate dispute she has [with] Transdermal." Id. at 2.  See also id. at 5

("Ms. Mattatall's claims of payment are mutually exclusive of getting the Fia

application dismissed. . . . Further, I believe that indications have been made to Ms.

Mattatall that her contract will be honored.").

     According to Mattatall, she relied upon these assurances when she executed

the Settlement Agreement on September 28, 2012.  On the same date, Mattatall

contends that the Transdermal board of directors passed a consent resolution

acknowledging Transdermal's obligations to Mattatall and Modi under the Stock

Purchase Agreement and the Employment Agreement. Pl.'s Ex. N (stating that

Transdermal "shall endeavor to honor the Corporation's Share Purchase

Obligations and the Employment Obligations as and when funds become

available").  Transdermal contends that this resolution was invalid because it was

not signed by all of the board members.  Additionally, Transdermal states that

evidence of these pre-contractual assurances are barred by the merger clause.  See

Pl.'s Ex. O at ¶ 10.

Mattatall also alleges that, after the Settlement Agreement was signed, Transdermal did not treat its obligations under the Stock Purchase Agreement or the Employment Agreement as extinguished. On November 30, 2012, Transdermal paid Mattatall and Modi $25,000; the memo section of the check states "SPA – Payment," suggesting a reference to the Stock Purchase Agreement. Pl.'s Ex. Q. On April 9, 2013, Mattatall and Modi were again each paid $25,000 and the memo section of the check states "DPM Purchase Agreement." Pl.'s Ex. R. Also on April 9, 2013, Transdermal reimbursed Mattatall $2,614.12 with a check with the notation "expenses." Mattatall contends that this reimbursement was paid for expenses she incurred pursuant to the Employment Agreement. Mattatall also points out that Transdermal apparently entered into an amended Stock Purchase Agreement with Modi, only, after the execution of the Settlement Agreement.

## LAW AND ANALYSIS

Transdermal argues that the Settlement Agreement signed by Mattatall clearly releases it from liability for all potential claims that Mattatall had against it prior to October 1, 2012, including the breach of contract claims she raises here. Mattatall argues that the release only applies to any claims that she, Transdermal/DPM, and Modi had against the "Applicants" and vice versa.

Unfortunately for Mattatall, the release is much more broadly worded than that.  It

states that *"Transdermal, DPM, Modi and Mattatall and each Applicant*, . . .  *does*

*hereby release, waive and forever discharge each other . . . from any and all*

*claims . . .  which a Party had, has or hereafter may have . . . because of or arising*

*from any matter, event or thing which has happened, developed or occurred before*

*the execution of this Settlement Agreement."* Pl.'s Ex. O.

       Under the choice of law provision in the Settlement Agreement, Nevada law

applies.  Pursuant to Nevada law, "[s]ummary judgment is appropriate when a

contract is clear and unambiguous, meaning that the contract is not reasonably

susceptible to more than one interpretation." University of Nevada, Reno v. Stacey,

116 Nev. 428, 431 (2000).  Whether a contract is ambiguous is a question of law

for the court.  Margrave v. Dermondy Properties, Inc., 110 Nev. 824, 827 (1994).

       The Settlement Agreement cannot be fairly read to apply only to the claims

Mattatall/DPM/Transdermal/Modi had against the Applicants and vice versa.

Rather, each party to the agreement released "each other" from "all claims"

"arising from any matter" occurring before the execution of the agreement. Pl.'s

Ex. O.  In this regard, the agreement is unambiguous.  Under the circumstances, the

court agrees with Mattatall that it is not logical that she would intend to release her

claims under the Stock Purchase and Employment Agreements.  Nonetheless, that

-7-

is what the broadly worded release does, and the court must ascertain the intent of the parties as manifested by their unambiguous agreement.  It is not for the court to rewrite the parties' agreement, nor is the court able to consider extrinsic evidence when the contract is unambiguous.  See Sheehan & Sheehan v. Nelson Malley & Co., 121 Nev. 481, 488 (2005).

## **ORDER**

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.  Plaintiff's complaint is DISMISSED WITH PREJUDICE.


s/John Corbett O'Meara
United States District Judge

Date:  April 18, 2014


I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, April 18, 2014, using the ECF system.


s/William Barkholz
Case Manager